UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IBRAHIM R. OLAYAN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-715-RLY-DML |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General of the United States, JANET NAPOLITANO, Secretary, Department of Homeland Security, MICHAEL AYTES, Acting Director, U.S. Citizenship and Immigration Services, KAMSING LEE, Acting Director, Indianapolis Office, U.S. Citizenship and Immigration Services, | ) ) ) ) ) ) ) ) | |
|     Defendants. | ) ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

Ibrahim Olayan ("Plaintiff"), a native and citizen of Jordan and a Permanent Resident of the United States, seeks to become a United Stated citizen. Plaintiff has filed a Complaint for Writ of Mandamus ("Complaint"), asking the court to adjudicate his application for Naturalization, or in the alternative, to compel Defendants[1] to adjudicate his application for Naturalization. Now before the court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[1]The Complaint originally named Michael Mukasey, former Attorney General of the United States, Michael Chertoff, former Secretary of the Department of Homeland Security, Emilio T. Gonzalez, former Director of the U.S. Citizenship and Immigration Services, and Donald Ferguson, former Acting Director of the U.S. Citizenship and Immigration Services, Indianapolis Office, as defendants. Their successors have been substituted as defendants pursuant to Federal Rule of Civil Procedure 25(d).

1

The court, having read and considered the parties' written arguments and the applicable law, now **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss Plaintiff's Complaint.

**I.      Background**

Plaintiff, a citizen of Jordan, received his Permanent Resident status on October 21, 1993. (Docket # 1, Complaint ¶ 6). After living in the United States for nearly ten years, Plaintiff filed his N–400 Application for Naturalization with Immigration and Naturalization Services, which is now known as United States Citizenship and Immigration Services ("USCIS"). (*Id.* ¶ 7). Although his application was received by USCIS on June 12, 2003, Plaintiff's application still has not been adjudicated. (*Id.*). In fact, USCIS has yet to even schedule an interview with Plaintiff. (*Id.* ¶ 8).

Plaintiff has inquired about the status of his application several times, and has even had Senator Evan Bayh ("Senator Bayh") make an inquiry on his behalf. (*Id.* ¶ 10; Docket # 1-4). In June 2005, Plaintiff's attorney was told that Plaintiff's background check was still pending. (Docket # 1-4 at 2). In April 2007, USCIS advised Senator Bayh that Plaintiff's application had not been completed because USCIS had not received the results from the Federal Bureau of Investigation ("FBI") regarding Plaintiff's name/background checks. (*Id.* at 6). On January 23, 2008, USCIS notified Plaintiff that his application was taking longer to process because additional review was required. (*Id.* at 3).

According to Kamsing Lee ("Lee"), Acting Field Office Director of the

Indianapolis Field Office, USCIS conducts several forms of security and background checks when an alien applies for naturalization. (Docket # 13-2 ("Lee Declaration") ¶ 3). These checks include a FBI fingerprint check, a check against the Department of Homeland Security managed Interagency Border Inspection System ("IBIS"), and a FBI name check. (*Id.*). Plaintiff provided USCIS with a set of fingerprints on July 29, 2003. (Complaint ¶ 11, Docket # 1-5). However, those fingerprints expired on October 29, 2004, meaning that Plaintiff must have his fingerprints taken again in order for his application to be processed. (Lee Declaration ¶ 4). USCIS has completed IBIS checks on Plaintiff, but Lee states that this check may need to be done again prior to adjudication because frequent updating is required. (*Id.* ¶ 5). The FBI has provided USCIS with a response regarding Plaintiff's name check, but USCIS claims that issues arose that require further inquiry and review.[2] (*Id.* ¶ 6-8). It is USCIS' position that it is unable to proceed to a final adjudication of Plaintiff's application for naturalization. (*Id.* ¶ 11).

## II.     Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. When considering a Rule 12(b)(1) motion to dismiss, the court accepts as true all well-pled factual allegations and draws all reasonable inferences from the allegations in favor of the plaintiff. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). If the movant's contention is that the complaint may

---

[2]USCIS has not offered Plaintiff, or this court, any explanation as to what those "issues" might be.

be formally sufficient but "there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The burden of proof is on the party asserting jurisdiction. *Id.* (*citing Mortensen v. First Fed. Sav. & Loan Ass'n*. 549 F.2d 884 (3d Cir. 1977).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a claim for "failure to state a claim upon which relief may be granted." To survive a motion to dismiss, the allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads himself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true, and it draws all reasonable inferences in favor of the plaintiff. *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir. 1997); *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).

### III. Discussion

Plaintiff asserts that this court has subject matter jurisdiction under 8 U.S.C. § 1447(b) of the Immigration and Nationality Act ("INA"), 5 U.S.C. §§ 701, 704 of the Administrative Procedure Act ("APA"), and 28 U.S.C. § 1361 ("Mandamus Act"). Defendants argue that this action should be dismissed for lack of subject matter jurisdiction because the court's jurisdiction has not vested under 8 U.S.C. § 1447(b) and

Plaintiff's claim cannot proceed under the APA. While Defendants do recognize that the Mandamus Act confers the court with subject matter jurisdiction, they argue that Plaintiff's mandamus claim should be dismissed for failure to state a claim. The court will address each of Defendants' arguments below.

### A. Jurisdiction Under 8 U.S.C. § 1447(b)

Under Section 1447(b), a district court has jurisdiction over a plaintiff's application for naturalization if USCIS fails to grant or deny the application by "the end of the 120-day period after the date on which the examination is conducted under such section." In his Complaint, Plaintiff claims that jurisdiction has vested with this court under 8 U.S.C. § 1447(b) because more than 120 days have passed since USCIS received Plaintiff's citizenship application. However, the 120 day time limit does not begin when USCIS receives an applicant's application, but rather when the "examination" has been conducted.

While the statute does not define "examination," the majority of courts have concluded that the term refers to USCIS's interview of the applicant. *Antonishin v. Keisler*, 2007 WL 2788841, *4 (N.D. Ill. Sept. 20, 2007) ("Consistent with the great majority of courts to consider this issue, we conclude that [Section 1447(b)] confers federal court jurisdiction 120 days after the applicant's USCIS interview"). As Plaintiff fails to offer any alternative interpretation, the court finds that the "examination" does indeed refer to the applicant's interview. As USCIS has not conducted Plaintiff's interview, the 120 day period has not yet begun to run. Accordingly, the court's subject

5

matter jurisdiction has not vested under 8 U.S.C. § 1447(b).

    **B.    Jurisdiction Under the APA**

In his response in opposition to Defendants' motion to dismiss, Plaintiff offers two arguments in support of his assertion that the court has jurisdiction under the APA. First, Plaintiff cites *Hu v. Reno* for the proposition that 5 U.S.C. § 701, *et seq.*, in combination with 28 U.S.C. § 1331, provides federal district courts with the jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." 2000 WL 425174 (N.D. Tex. 2000). However, even if the court were inclined to accept *Hu*'s reasoning, it would not help Plaintiff here. In making its holding, the court in *Hu* relied heavily on 5 U.S.C. §§ 702 and 706(1). Plaintiff failed to cite to either of these sections in his Complaint, and, therefore, cannot now rely on them to establish jurisdiction.

Second, Plaintiff argues that 5 U.S.C. § 555(b) confers the court with jurisdiction. The court need not evaluate the merits of this arguments as Plaintiff, again, failed to cite to this section in his Complaint. In determining whether the court has jurisdiction under the APA, the court will look only to the specific sections of the APA relied upon by Plaintiff in his Complaint, 5. U.S.C. §§ 701 and 704.

On its face, Section 701 cannot confer the court with jurisdiction over this matter. This section merely sets forth the APA's applications and definitions and makes no mention of federal court jurisdiction. Section 704 does grant a federal district court jurisdiction to review "final agency action for which there is no other adequate remedy in a court." However, a "final" agency action is one which marks the "consummation" of

6

the agency's decision-making process. *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (*citing Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948). In the instant case there is no question that the agency has not completed its decision-making process. In fact, Plaintiff's Complaint seeks to compel the agency to do just that. Accordingly, the Plaintiff cannot establish subject matter jurisdiction under either Section 701 or Section 704.

### C. The Mandamus Act

Pursuant to 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Unless the claim is "so frivolous that it fails the *Bell v. Hood* test, the district court has jurisdiction under § 1361 to determine whether the prerequisites for mandamus relief have been satisfied." *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386-87 (7th Cir. 2003) (*citing* 327 U.S. 678 (1946)). As the court is satisfied that Plaintiff's claim is plausible enough to engage jurisdiction, the court turns to the question of whether Plaintiff's request for mandamus relief should be dismissed for failure to state a claim.

A plaintiff is entitled to mandamus relief if "three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002) (*citing Scalise v. Thornburgh*, 891 F.2d 640, 648 (7th Cir. 1989)). The court examines each of these requirements in turn.

### 1. Clear right to the relief sought

Defendants argue that Plaintiff cannot establish that he has a clear right to the relief sought because he has not shown that he has met all of the requirements for naturalization, such as demonstrating that he is of "good moral character." However, it is important to note that Plaintiff's mandamus action is not a request for the court to compel USCIS to grant him citizenship, but rather a request for the court to compel USCIS to adjudicate his application, whatever the agency's final determination may be. Therefore, the relevant inquiry is whether Plaintiff has a right to have his application for naturalization adjudicated.

In order to determine if Plaintiff has a right to have his case adjudicated, the court must look to the statute in question to determine what Congress directed. *Iddir*, 301 F.3d at 499 (*citing United States v. Markgraf*, 736 F.2d 1179 (7th Cir. 1984)). The Seventh Circuit has found that diversity immigration visa applicants have a clear right to have their cases adjudicated because the relevant section of the statute at issue "repeatedly commands the Attorney General, in nondiscretionary language, to do a variety of tasks related to the DV Program." *Id.* at 499-500. The court finds that this reasoning is applicable to the instant case because the statute relating to the naturalization process also uses non-discretionary language to direct the Attorney General to complete specific acts. *See e.g.*, 8 U.S.C. § 1445(c) ("Hearings . . . on applications for naturalization *shall be held* at regular intervals specified by the Attorney General."); 8 U.S.C. § 1446(b) ("The Attorney General *shall designate* employees of the Service to conduct examination upon

applications for naturalization."); 8 U.S.C. § 1446(d) ("The employee designated to conduct any such examination *shall make a determination* as to whether the application should be granted or denied, with reasons therefor.") (emphasis added). Based upon the directive language used by Congress in the applicable statute, the court finds that Plaintiff does have a right to have his naturalization application adjudicated. Therefore, Plaintiff has established that he has a clear right to the relief sought.

### 2. Duty of Defendants to do the act in question

As noted above, the Attorney General and his designated employees are required by statute to conduct an examination when there has been an application for naturalization and to then make a determination as to whether that application should be granted or denied. *See* 8 U.S.C. §§ 1446(b), (d). Although the statute does not specify a time by which an adjudication must be made, several courts addressing delays with adjustment of status applications have found that "by necessary implication the adjudication must occur within a reasonable time." *He v. Chertoff*, 528 F.Supp.2d 879, 882-83 (N.D. Ill. 2008) (*citing Agbemaple v. I.N.S.*, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *see also Wu v. Chertoff*, 2007 WL 1223858, at *3 (N.D. Cal. Apr. 25, 2007); *Paunescu v. INS*, 76 F.Supp.2d 896, 900 (N.D. Ill. 1999). The court finds that the reasoning employed in the adjustment of status context is also applicable to the adjudication of naturalization applications. USCIS has a duty to adjudicate Plaintiff's application in a reasonable amount of time; otherwise, the directives of Congress would become meaningless as USCIS could delay adjudication of applications indefinitely.

Defendants argue that any duty to adjudicate does not yet exist because USCIS is not required by law to take any action on Plaintiff's application until his background and security checks have been completed. *See* Department of Justice Appropriations Act of 1998, Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448; 8 C.F.R. § 335.2(b). However, other courts have found that USCIS cannot avoid their duty to adjudicate an application by shifting blame to the FBI. *He*, 528 F.Supp.2d at 883; *Singh v. Still*, 470 F.Supp.2d 1064, 1068-69 (N.D. Cal. 2007). As the *He* court pointed out, while USCIS may not have direct control over the pace at which the FBI proceeds, it does have control over how promptly it requests the background check in a particular case and is able to both follow-up on a request and ask for expedited processing. *He*, 528 F.Supp.2d at 883. Furthermore, USCIS is not the only named defendant in this case. Plaintiff has also named the Attorney General, and the FBI is one of the Justice Department agencies which the Attorney General oversees. Defendants cannot evade responsibility by shifting the blame to an agency which is ultimately under one of the Defendants' control.

The court finds that Plaintiff has established that Defendants have a duty to adjudicate his application within a reasonable amount of time. At this stage, the court need not make a determination as to whether or not the delay in this case is unreasonable; for purposes of Defendants' motion to dismiss, Plaintiff is entitled to the inference that a five-year delay in the adjudication of an application for naturalization is unreasonable.

### 3. No other adequate remedy

Defendants fail to offer any argument to establish that any other adequate remedy

is available to Plaintiff. In any event, the court agrees with Plaintiff that no other administrative or judicial remedy is available to him. The only remotely plausible theory of alternative relief is that which is spelled out in 8 U.S.C. § 1447(b). However, as the court has explained above, Section 1447(b) does not offer an avenue to relief until USCIS has conducted an interview of Plaintiff. As USCIS has complete control over whether an interview will be scheduled, the court finds that requiring Plaintiff to continue to wait for an interview which may never take place is not a suitable alternative. Accordingly, the court finds that Plaintiff has demonstrated that he has no adequate remedy available to him other than mandamus.

### IV. Conclusion

For the foregoing reasons, the court now **GRANTS IN PART and DENIES IN PART** Defendants' motion to dismiss (Docket # 13). While the court agrees with Defendants that jurisdiction does not exist under 8 U.S.C. § 1447(b) or 5 U.S.C. §§ 701, 704, the court finds that it has jurisdiction under 28 U.S.C. § 1361. Furthermore, the court finds that Plaintiff has sufficiently stated a claim under 28 U.S.C. § 1361. Accordingly, the court declines to dismiss Plaintiff's Complaint for Writ of Mandamus. **SO ORDERED** this 17th day of February 2009.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies To:

Kathryn Louise Moore
US DEPT OF JUSTICE, CIVIL DIVISION
kathryn.moore@usdoj.gov

Claire M. Ty
ABBOTT HARRIS & PERELLI
clairety@ahplegal.com